UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 15-80057-CIV-BLOOM/VALLE

**ROBERTO JHON MANRIQUE**,

    Plaintiff,

v.

**WELLS FARGO BANK N.A.**,
*as Trustee for Carrington Mortgage Loan Trust, Series 2006-Nc4 Asset-Backed Pass-Through Certificates*, and
**CARRINGTON MORTGAGE SERVICES, LLC**,

    Defendants.
_____/

## ORDER

**THIS CAUSE** came before the Court on Defendants' Motion to Dismiss, ECF No. [22], Plaintiff's Amended Complaint, ECF No. [18], seeking dismissal pursuant to Fed. R. Civ. P. 12(b)(6). The Court is fully advised after careful review of the Motion, the parties' briefs, and the applicable law.

### I.   Background

Plaintiff filed the instant action on January 16, 2015, and an amended complaint on March 27, 2015—seeking relief under the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601, *et seq.*, the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692, *et seq.*, and the Florida Consumer Collection Practices Act ("FCCPA"), Fla. Stat. §§ 559.55, *et. seq.*

Based on the allegations in Plaintiff's Amended Complaint, Defendant Carrington Mortgage Services ("Carrington") currently services a mortgage loan on behalf of Defendant Wells Fargo Bank N.A. ("Wells Fargo"). On December 4, 2013, Defendant Wells Fargo filed a foreclosure proceeding against Plaintiff in the Fifteenth Judicial Circuit Court of Florida, Case

No. 502013CA017850XXXXMB.  *See* ECF No. [22-1] at 4.  On September 4, 2014—while the foreclosure case was underway—Plaintiff sent a written request for information to Defendant Carrington, asking for "an accurate statement of the total outstanding balance that would be required to satisfy the above-referenced obligation in full as of a specified date ('payoff statement')."  ECF No. [18] at 6.

After a month passed without "an accurate payoff statement," Plaintiff sent Defendant Carrington a letter raising a notice of error.  *Id.* at 7.  Defendant Carrington responded on October 17, 2014, which contained a payoff statement valid through November 15, 2014.  *Id.*  Plaintiff alleges the response "contained a vague, misleading, and deceptive line item for 'Other Unpaid Expenses' in the amount of $7,235.75 without any explanation of same." *Id.* at 8.  Plaintiff responded "seeking an explanation and documentation to support the $7,235.75," and Defendant Carrington responded on December 17, 2014 "with a purported breakdown of the 'Total Fees Owed,' which Plaintiff alleges had a $2,400.00 discrepancy with the "Other Unpaid Expenses" amount.  *Id.*

Plaintiff also alleges that in September 2014, Plaintiff submitted a loan modification package to Defendant Carrington "which stated that the subject property was 'owner occupied' and Plaintiff's 'primary residence.'"  ECF No. [18] at 9.  Plaintiff alleges that Defendant Carrington "caused property inspections to be performed on Plaintiff's residence twenty-two (22) times from November 2012 through December 2014," amounting to $330.00 of charges.  *Id.*  Plaintiff alleges these inspections are "to increase its billing of Plaintiff and borrowers at large," as Defendant Carrington does not need them, and "the inspections were performed by an unknown third party . . . to visit Plaintiff's home [to] determine if the property is occupied . . . in

the open and broad daylight, in full view of Plaintiff's neighbors, which caused embarrassment, anxiety and consternation to Plaintiff." *Id.*

Plaintiff further alleges that the payoff statement reflected that Plaintiff was responsible for three Broker's Price Opinions ("BPO") fees, totaling $270.00. *See id.* at 10. Based on the National Association of BPO Professionals, "BPOs cost as little as $30.00," and as such, Defendant Carrington "has significantly marked-up the actual cost of the BPO charged to Plaintiff's Mortgage Loan." *Id.* Plaintiff further alleges that Defendant Carrington "is not in need of obtaining three BPOS," and "[t]he purpose is merely to profit of Plaintiff for these fees." *Id.* Plaintiff alleges that "[t]he charge of twenty-two (22) property inspection fees and three (3) BPOs to Plaintiff's Mortgage loan is not expressly authorized by the agreement creating the debt or permitted by law," and "[t]he inspections are neither reasonable nor appropriate under Plaintiff's circumstances and under Plaintiff's mortgage and are, therefore, not authorized under same." *Id.* at 14. Finally, Plaintiff alleges that "[t]he charge of twenty-two (22) property inspection fees and three (3) BPOs to Plaintiff's Mortgage Loan is a claim or an attempt to enforce a debt that Carrington knows is not legitimate." *Id.* at 15.

## II.     Legal Standard

A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that the Rule 8(a)(2)'s pleading standards "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Nor can a complaint rest on "naked assertion[s]' devoid of

'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)). "To survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570).

When reviewing a motion to dismiss, a court, as a general rule, must accept the plaintiffs' allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiffs. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012); *Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002). While the Court is required to accept all of the allegations contained in the complaint and exhibits attached to the pleadings as true, this tenet is inapplicable to legal conclusions. *Iqbal*, 556 U.S. at 678; *Thaeter v. Palm Beach Cnty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006) ("When considering a motion to dismiss…the court limits its consideration to the pleadings and all exhibits attached thereto.") (internal quotation marks omitted).

### III. Discussion

Defendants raise two grounds for dismissal: (1) Plaintiff's Amended Complaint should be dismissed pursuant to the Anti-Absurdity Canon, and (2) Plaintiff's Amended Complaint fails to state a claim under the FDCPA and the FCCPA because the alleged conduct complained of was not in connection with the collection of a debt. Alternatively, Defendants request that the Court stay this action pending the outcome of the underlying foreclosure action. *See* ECF No. [22] at 4, 6, 10.

### A. Whether Plaintiff's Amended Complaint should be dismissed pursuant to the Anti-Absurdity Canon

Defendants argue that dismissal is warranted "in order to maintain Congress's intent, and protect the TILA, the FDCPA, and the FCCPA from manipulative practices attempting to distort

4

their respective effect" because "[t]he correspondence sent by Plaintiff, through counsel, to CMS on September 4, 2014 . . . was used to elicit a series of communications between the parties in the hopes of giving rise to a violation of one or more Federal and State laws." ECF No. [22] at 4. Defendants maintain that "[i]t is illogical to presume that Congress, in its efforts to assist borrowers in obtaining access to loan information, intended for individuals to exploit settlements or recover damages by asserting meritless or manufactured claims," and thus, "where a RESPA action is not grounded upon genuine failures of disclosure or surreptitious loan practices, but rather on an excessive 'attempt to leverage settlement and obtain fees . . . [s]uch actions are contrary to the intent of the statute and . . . fail as a matter of law.'" *Id.* at 5 (quoting *Guillaume v. Fed. Nat'l Mortg. Ass'n*, 928 F Supp. 2d 1337, 1341 (S.D. Fla. 2013)).

The court in *Guillaume* dismissed a TILA claim where a mortgagee, while engaged in a foreclosure proceeding, requested information from a loan servicer regarding the identity of the owner and master servicer of an applicable loan. In so dismissing, the court explained that "[i]nstead of being used as a shield, however, plaintiffs' lawyers have used TILA to spawn a cottage industry of lawsuit farming by sending requests for information and, without further inquiry, suing creditors and servicers for technical violations of the statute." *Guillaume*, 928 F. Supp. 2d at 1341. The Court ruled that because the mortgagee could have utilized discovery in the foreclosure proceeding to obtain this information—utilizing the same counsel in the TILA and foreclosure cases—"allowing Loan Lawyers to capitalize on alleged defects in a response to a request for information sent to Wells Fargo while foreclosure proceedings were pending between parties is not in keeping with the spirit or purpose of TILA as a framework for meaningful disclosure and consumer protection." *Id.*

The Court, however, is not inclined to apply *Guillaume* to the instant case because "the clear meaning of the statute should control before one attempts to divine congressional intent." *Gallowitz v. Fed. Home Loan Mortg. Corp.*, 944 F. Supp. 3d 1265, 1267 (S.D. Fla. 2013). The Court agrees that "[i]f these cases are so clearly contrary to congressional intent, one would think that Congress would attempt to rectify erroneous judicial interpretations." *Id.* Thus, under the facts of this case, where Plaintiff requested a payoff statement, and Defendants allegedly failed to comply with TILA in responding to that request, *see* ECF No. [18] at 6-7, the Court finds that the anti-absurdity canon is inapplicable to this case. *See Lucien v. Fed. Nat'l Mortg. Ass'n*, 21 F. Supp. 3d 1379, 1385 n.1 (S.D. Fla. 2014) ("Nevertheless, TILA and Regulation Z do provide for civil damages for Green Tree's failure to provide the payoff statement Lucien requested. And, unless and until Congress elects to amend the statute, defendants can avoid cases like this by simply providing the required information when requested."); *See also Galeano v. Fed. Home Loan Morg. Corp.*, No. 12-61174-CIV, 2012 WL 3613890, at *3 n.1 (S.D. Fla. Aug. 21, 2012) (declining to consider similar argument because "the sole issue in a Rule 12(b)(6) motion is whether the Complaint states a claim upon which relief can be granted"); *Justice v. Ocwen Loan Servicing*, No. 2:13-CV-165, 2015 WL 235738, at *15 (S.D. Ohio Jan. 16, 2015) (considering similar argument "relevant to any damages that the Justices may have suffered, not whether there was a violation of TILA's mandates") (citing *Gallowitz*, *Guillaume*, and *Galeano*). Thus, the Court declines to grant Defendants' motion on this basis.[1]

---

[1] In the Reply, Defendants assert that Plaintiff has made several representations in the Amended Complaint that "are completely contradictory" to representations Plaintiff has made in the foreclosure action. *See* ECF No. [28] at 2 (citing ECF No. [18] at ¶¶ 16, 27; ECF No. [22-1] at ¶¶ 1, 4). However, Defendants rely on Plaintiff's *proposed* answer dated July 18, 2014, *see* ECF No. [28-1], and Plaintiff's answer was filed with the state court on September 14, 2014. *See* ECF No. [22-1] at 11. Because Plaintiff's answer which was filed with the state court is not contained in the record, the Court declines to address this argument.

### B. Whether Plaintiff's Amended Complaint alleges conduct in connection with the collection of a debt

The FDCPA provides, in pertinent part:

> A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: (1) the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

15 U.S.C. § 1692f(1). Also, the FDCPA provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. "The false representation of (A) the character, amount, or legal status of any debt; or (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt" also constitute violations of the FDCPA. 15 U.S.C. § 1692e(2). The relevant portion of the FCCPA provides: "[i]n collecting consumer debts, no person shall: . . . (9) Claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist." Fla. Stat. § 559.72(9). *See also* Fla. Stat. § 559.77(5) ("In applying and construing this section, due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to the federal Fair Debt Collection Practices Act.") (citing 15 U.S.C. § 1692, *et seq*.).

Defendants argue that dismissal is warranted because "it is clear that CMS was not engaged in the collection of a debt . . . CMS did not *affirmatively contact* the Plaintiff in an attempt to elicit payment of the debt. In fact, the only conduct attributed to CMS is that it inaccurately *responded* to Plaintiff's Payoff Request as required by Federal law." ECF No. [22] at 9 (emphasis in original). Defendants assert that the appropriate cause of action for the

7

response to the payoff request lies under TILA, and "[a]s the Payoff Statement was required to be sent under TILA, and the same was not done in connection with the collection of a debt, the Plaintiff's insincere attempt to prime violations of the debt protection statutes should be dismissed with prejudice." *Id.* at 10 (citing *Hurtubise v. PNC Bank, N.A.*, No. 13-AP-0015-WS (Fla. 6th Cir. Appt. Ct. Jan. 5, 2015)). In response, Plaintiff explains that his FDCPA and FCCPA claims are not based upon the response itself, but that "[t]he payoff statement merely evidences the unlawful charges of fees." ECF No. [25] at 12. Plaintiff explains that his claims are premised upon "Defendants' *charging* of unlawful, deceptive, and misleading fees." *Id.* at 12-13. *See also* ECF No. [18] at 9-10.

The Court finds *Miljkovic v. Shafritz & Dinkin, P.A.*, __ F.3d __, 2015 WL 3956570 (11th Cir. 2015), a case recently decided by the Eleventh Circuit, to be instructive. At issue in *Miljkovic* was whether a sworn reply in a state court proceeding filed by an attorney on behalf of a debt collector was actionable under the FDCPA—specifically 15 U.S.C. §§ 1692d-1692f. Though affirming the district court's dismissal of the plaintiff's complaint in that case, the Eleventh Circuit held that the sworn reply indeed was actionable under the FDCPA. *See id.* at *1. For the first time on appeal, the appellees argued that the sworn reply did not constitute a "communication" under the FDCPA. Declining to consider that issue specifically, the Eleventh Circuit, nonetheless, explained:

> Appellant's claims are based on Appellees' "conduct" . . . communications in connection with debt collection are governed by § 1692c, a provision that is not at issue here . . . the provisions that are at issue, §§ 1692d-1692f, regulate more than a debt collector's communications; they prohibit specified conduct, representations, and means of collection. While these sections necessarily encompass communications, a violation thereof may be premised on conduct not falling within the statutory definition of communication." *See* §§ 1692a(2), 1692d-1692f. Appellees' red herring is a rough fish.

*Id.* at *6 n.7.

8

Following this reasoning, the Court finds that Plaintiff's Complaint is not premised upon the actual payoff statement itself; rather, the payoff statement is a part of Defendants' conduct, and that conduct has allegedly violated the FDCPA and FCCPA. A careful reading of Plaintiff's Amended Complaint shows that part of Plaintiff's claim under 15 U.S.C.§ 1692e is premised on the allegation that the mortgage statement's labeling of property inspection fees as "MISC THIRD PARTY RECOVERABLE Billed" constitutes a "false representation and deceptive means to collect a debt." ECF No. [18] at 12. *See also* ECF No. [18-6] at 1. This labeling is alleged to constitute deception because "instead of labeling the charges as "inspection fees" or the like, Carrington chose to attempt to deceive Plaintiff by labeling the charges as "MISC THIRD PARTY RECOVERABLE Billed," *id.* at 9, and accordingly "[t]he term "MISC THIRD PARTY RECOVERABLE Billed" is a false, misleading, and deceptive description for a 'property inspection' fee." *Id.* at 13. The allegedly false payoff statement included, though not explicitly, those fees as part of the total amount due.

Thus, because Plaintiff's Amended Complaint is premised on the conduct of charging allegedly invalid fees and allegedly providing a false payoff statement, which included those fees along with a discrepancy between "Total Fees Owed" and "Other Unpaid Expenses," ECF No. [18] at 8, Plaintiff's Amended Complaint sufficiently alleges a violation of the FDCPA and the FCCPA. Defendants' assertion that "Congress enacted the TILA to provide a remedy for an improper Payoff Statement, and separately enacted the FDCPA to prevent abusive practices in the collections of debts," ECF No. [22] at 9, is a red herring. Based on the allegations of Plaintiff's Amended Complaint, the Court need not decide the issue of whether claims under the FDCPA and FCCPA can lie solely based on Defendant's payoff statement itself as a TILA-required response. The Court thus declines to grant Defendants' Motion on this basis. As the

9

Defendants advance no further arguments in favor of dismissal, Defendants' Motion is due to be denied.

### C. Whether a stay is merited

Defendants finally argue that a stay is appropriate because "if the State Court hearing the Foreclosure Action finds that the property inspection fees are not proper, the same will not be recovered by the Defendants against the Plaintiff," and "[a]t a minimum, however, a resolution of the Foreclosure Action will narrow the issues before this Court." ECF No. [22] at 10. The Court disagrees. The fact that Defendants may not recover property inspection fees from Plaintiff because the state court finds them improper does not dispose of the separate and distinct issues of law and fact regarding whether Defendants violated the FDCPA and FCCPA. The Court denies Defendants' request for a stay.

### IV. Conclusion

Being fully advised, it is **ORDERED AND ADJUDGED** as follows:

1. Defendants' Motion to Dismiss, **ECF No. [22]**, is **DENIED**.

2. Defendants shall file an Answer to the Amended Complaint **no later than July 15, 2015.**

3. The parties shall continue to abide by the Court's Scheduling Order, ECF No. [13].

**DONE AND ORDERED** in Ft. Lauderdale, Florida, this 1st day of July, 2015.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record